# United States Court of Appeals
## For the First Circuit

No. 23-1872

JOSÉ ERNESTO HERNÁNDEZ-CASTRODAD; IRIS MARTA MARCANO; CONJUGAL
PARTNERSHIP HERNÁNDEZ-MARCANO,

Plaintiffs, Appellants,

v.

HON. SIGFRIDO STEIDEL-FIGUEROA, in his official capacity as
Administrator of the Administration of Tribunals of the
Commonwealth of Puerto Rico (OAT),

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia Carreño-Coll, U.S. District Judge]

Before

Barron, Chief Judge,
Breyer,* Associate Justice,
and Thompson, Circuit Judge.

Eduardo Vera Ramirez, with whom Julio C. Alejandro-Serrano
and Landron & Vera, LLP were on brief, for appellants.
Juan A. Marqués-Díaz and Nayuán Zouairabani-Trinidad, with
whom Isabel Torres-Sastre and McConnell Valdés LLC were on brief,
for appellee.

---

* Hon. Stephen G. Breyer, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

July 1, 2026

THOMPSON, **Circuit Judge**. Appellants José Ernesto Hernández-Castrodad and Iris Marta Marcano (collectively "appellants") once had their land taken by the Commonwealth of Puerto Rico. As constitutionally required, the Commonwealth paid appellants over two million dollars in just compensation for that property. But appellants say a second taking of their property occurred when that money changed hands.

They point the finger at the middleman -- defendant-appellee the honorable Sigfrido Steidel-Figueroa ("Steidel") -- whose lack of efficient and transparent processes (they say) failed to notify them of interest that accrued on their money, and for deducting a 15% administrative fee from that accrued interest. Appellants claim that both practices contravene their constitutional protections against takings of private property without just compensation or due process.

Appellants sued Steidel in his official capacity as the Administrator of the Administration of Tribunals of the Commonwealth of Puerto Rico (known as "OAT" based on its Spanish name), seeking declaratory and equitable relief (in various forms) from these alleged takings and deprivations without due process. The United States District Court for the District of Puerto Rico dismissed the bulk of appellants' claims. And, later, it awarded summary judgment to Steidel on the only claim that survived

- 3 -

dismissal, reasoning that the deduction of the 15% administrative fee did not amount to a taking. Appellants filed this appeal asking us to consider both the dismissal and entry of summary judgment.

But the complex legal questions appellants pose face an equally formidable jurisdictional hurdle heretofore unaddressed. That is, whether any filings or orders in the district court were subject to the automatic stay provisions of Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), or whether this case can proceed after the Commonwealth's Title III Plan's discharge. After untangling appellants' efforts to sidestep PROMESA's ramifications, we dismiss appellants' appeal of their claim decided on summary judgment and affirm the district court's dismissal.

**I**

To efficiently elucidate the happenings-below and the parties' appellate arguments, we'll start by explaining the statutory and regulatory scheme behind appellants' admonishments. From time to time, and for various reasons, litigants deposit funds with the Puerto Rico Court of First Instance for future disbursement.[1] As relevant here, when the Commonwealth initiates

---

[1] Courts in the Commonwealth of Puerto Rico are not unique in this regard. See generally Goldstein v. Cox, 396 U.S. 471, 472 & n.1 (1970).

a condemnation proceeding, it estimates the amount of just compensation owed and deposits that amount with the court.[2]  See E.L.A. v. Registrador, 11 P.R. Offic. Trans. 152, 155 (1981).  The court keeps these funds in interest-bearing accounts pending disbursement.  See P.R. Laws Ann. tit. 7 § 253.  And, pursuant to judicial regulation, interest owned by third parties "shall be delivered to the owners, through the procedure provided by the [Administrative Director of the Courts], once custody and management by the Judicial Branch ends."

In this scheme, OAT takes a cut of the interest that accrued while the funds were in its possession.  Specifically, Puerto Rico law authorizes the OAT Administrator to, "if delegated on him," "determine the reasonable share of [interest on "other funds"[3]] that may be deposited in . . . special accounts to cover expenses and other liabilities incurred by [the Judicial] Branch for services rendered in the receiving, accounting, control, custody and delivery of these deposits."  P.R. Laws Ann. tit. 7 § 253b.  Pursuant to that statutory authorization, the judiciary promulgated a regulatory framework governing the interest on other

---

[2] "Just compensation" comes from the text of the Fifth Amendment, U.S. Const. amend. V, and generally means "the full monetary equivalent of the property taken."  United States v. Reynolds, 397 U.S. 14, 16 (1970).

[3] Judiciary regulations define "other funds" as "[m]oney in the custody of the Judicial Branch belonging to private individuals."

funds that states that "[t]he Judicial Branch shall retain a reasonable amount in interests accrued on Other Funds deposited."

Discerning what is "reasonable" is not always an easy task. See generally CBS, Inc. v. FCC, 453 U.S. 367, 398 (1981) (White, J., dissenting) ("What is 'reasonable' access and what are 'reasonable' amounts of time . . . are matters about which fair minds could easily differ."). So, OAT hired an outside accounting firm to conduct a cost study and calculate how much the judiciary spent on managing "other funds" so that OAT could impose a fee to "recover administrative costs." The accounting firm ultimately landed on "15% of the total interest earned by each beneficiary" per quarter.[4]

So, to summarize the scheme we're working with: funds deposited with courts on behalf of third parties get placed into interest-bearing accounts where interest accrues until

---

[4] Appellants only relied on the cost study report when opposing Steidel's motion for summary judgment. On appeal, it remains unclear whether OAT actually adopted the firm's recommendation to take 15% of the accrued interest quarterly if OAT deducts 15% at the time of disbursement. Neither the parties' arguments nor the district court's decisions rely on any specific version of the administrative fee, and neither will our forthcoming analysis. Furthermore, Steidel submitted an "Informative Motion" following oral argument stating that no administrative fee has been collected from appellants' accrued interest, which had reached a total of $1,939.76 as of March 2026. Our appellate review concentrates solely on the factual record presented in the district court, and we will not be considering any evidence introduced in Steidel's motion. See, e.g., Rosaura Bldg. Corp. v. Mun. of Mayagüez, 778 F.3d 55, 64 (1st Cir. 2015).

- 6 -

disbursement, and OAT charges a 15% administrative fee from the accrued interest for managing the funds.

## II

### A

In late 2011, eminent domain proceedings began against appellants in the Puerto Rico Court of First Instance. A 2018 final judgment in those proceedings ordered the Puerto Rico Highway and Transportation Authority ("PRHTA") to pay appellants $2,414,251.10 in just compensation. That final judgment included "the simple legal interest per semester" of $15,255.47 from PRHTA representing interest accrued on the principal value of the just compensation award between the time appellants' land was taken and when PRHTA was ordered to pay. Appellants received payments of varying amounts between January 2012 and January 2019, and all just compensation owed to appellants from the 2018 final judgment has been paid. Therefore, the only interest at issue (and what we will be referring to as "the interest" from here on out) is the interest that accumulated after PRHTA made various deposits of appellants' estimated and awarded just compensation with the court up until appellants withdrew those deposits. Only this interest is subject to OAT's administrative fee. See P.R. Laws Ann. tit. 7 § 253b.

In September 2020, appellants filed a class action complaint against Steidel in his official capacity as the OAT Administrator.[5]  The complaint alleged that Steidel retained interest generated by monies belonging to third parties, constituting "an unconstitutional taking of private property without just compensation."  (All involved refer to this as appellants' "interest" claim, and we'll be using that label, too.)  The complaint also alleged that Steidel deducts an administrative fee for managing these funds, constituting "another form of unconstitutional taking."  (Similarly, this has been dubbed appellants' "administrative fee" claim, and we'll be borrowing this label, too.)  To remedy these alleged wrongs, appellants asked the district court to issue a series of declaratory judgments and to grant injunctive relief.

Steidel responded with a motion to dismiss, which the district court granted over appellants' objections.  The court's holding rested on a sua sponte determination that appellants lacked standing.[6]  It reasoned that, because appellants had failed to

---

[5] The district court never reached the issue of class certification and, due to our forthcoming resolution, neither will we.  See Narrigan v. Goldberg, 170 F.4th 14, 17 (1st Cir. 2026) (limiting review to named plaintiff's appeal where a class was not certified below).

[6] Per constitutional demand, a plaintiff must establish standing through a tripartite showing: "that she has suffered an injury in fact, that her injury is fairly traceable to the disputed

allege that they requested disbursement of their interest, they necessarily failed to allege an injury in fact, as required. Additionally, the court viewed appellants' claims as "akin to a generalized grievance," giving it further reason to find that appellants lacked standing. Sans standing, the court granted Steidel's motion and dismissed the case accordingly.

But, after appellants moved for reconsideration, the court had a change of heart and decided that one of appellants' claims "should have survived Steidel's motion to dismiss." That sole surviving claim was part of the administrative fee claim,[7] which the court resurrected because appellants had plausibly alleged that Steidel "is deducting unreasonable administrative fees." In reinstating this claim, the court carefully cabined appellants' requested relief to only prospective injunctive relief from future administrative fees because the Eleventh Amendment barred any retrospective demands for payment. In sum, the court held at that juncture appellants' "only surviving claim is that Steidel has violated the Takings Clause by deducting an administrative fee from their accrued interest."

---

conduct, and that the relief sought promises to redress the injury sustained." Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).

[7] The court briefly revived the due process portion of appellants' administrative fee claim before dismissing it on the merits.

That "only surviving claim" later succumbed to Steidel's motion for summary judgment. The court granted summary judgment in Steidel's favor because it found that the administrative fee was reasonable (and thus, legally speaking, not a taking) given the benefits provided by the judiciary, and because appellants did not submit any evidence to rebut the fee's reasonableness. The court also pointed out that appellants dedicated most of their summary judgment briefing to a due process claim that had already been dismissed, and thus no longer at issue. Appellants moved the court to alter or amend this judgment and requested an opportunity for supplemental discovery, but the court denied that motion and informed appellants "the discovery ship has sailed."

## III

While the story just told played out, in May 2017 the Commonwealth of Puerto Rico filed a petition under Title III of PROMESA, 48 U.S.C. §§ 2161 et seq., to restructure its debts in a specially designated court (commonly referred to as the "Title III" court), see Villalobos-Santana v. P.R. Police Dep't, 171 F.4th 544, 546 (1st Cir. 2026). The Title III court later set a June 29, 2018, deadline for filing prepetition proof of claims against the Commonwealth. See id. And, on January 18, 2022, the Title III court confirmed the Commonwealth's Title III Plan, with an effective date of March 15, 2022. See id.; see generally In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. 1 (D.P.R. 2022).

- 10 -

Under 48 U.S.C. § 2161(a), the automatic stay provisions, 11 U.S.C. §§ 362 and 922, and the bankruptcy discharge provisions, 11 U.S.C. §§ 944 and 524(a)(1)-(2), of the Bankruptcy Code are incorporated into PROMESA. Generally speaking (we'll be getting into some of the details shortly), for our court to have jurisdiction over this appeal, the underlying action cannot have been filed in violation of the automatic stay, see HealthproMed Found., Inc. v. Dep't of Health & Hum. Servs., 982 F.3d 15, 19-20 (1st Cir. 2020), and cannot have been discharged by the Commonwealth's Plan and Confirmation Order, see Díaz-Santiago v. Sánchez-Acosta, No. 24-1256, 2025 WL 2670236, at *2 (1st Cir. July 23, 2025); In re Fin. Oversight & Mgmt. Bd. for P.R., 650 B.R. 286, 295-96 (D.P.R. 2022).

These PROMESA-related developments went unaddressed in the district court proceedings. Appellants did not file a proof of claim or seek relief from the automatic stay in the Title III court.[8] So, we directed the parties to show cause as to (1) "whether any filings or orders in the district court case at issue in this appeal were subject to the automatic stay provisions"

---

[8] The parties were directed to state whether any proof of claim or administrative expense claim had been filed with the Title III court, or whether any party sought or received a retroactive lift of the automatic stay. Appellants did not respond to this inquiry, but Steidel reports that nothing was filed with the Title III court. Thus, we proceed based on that uncontested representation.

and (2) "whether any aspect of this appeal can proceed in light of the Commonwealth's Title III Plan's discharge (§ 92.2) and discharge injunction (§ 92.3) provisions, or any other Plan provisions."

The parties duly responded. Appellants succinctly replied to our first question: "The answer to that question is no." As for our second question regarding the Commonwealth's Title III Plan's discharge, appellants stated that they were mounting a Fifth Amendment challenge, and they believed our precedent "made clear that a Fifth Amendment claim, such as this case, cannot be discharged in Tittle [sic] III bankruptcy without the just compensation." See In re Fin. Oversight & Mgmt. Bd. for P.R., 41 F.4th 29, 37 (1st Cir. 2022). Indeed, we previously affirmed the Title III court's order wherein it confirmed the Plan and found that the Fifth Amendment prohibited the Commonwealth from paying claimants less than just compensation on their prepetition takings claims. Id. at 46. But we also acknowledged the difference between "what makes the denial of just compensation substantively unlawful [and] what may make a claim for just compensation procedurally inactionable or waivable by the claimant" (i.e., when a claim is time-barred or when a claim is settled for less than full value). Id. at 45.

After receiving the parties' show-cause responses, we further directed each party to "fully brief all issues pertaining

to jurisdiction," because our capacity to review aspects of appellants' case remained unclear. For example, we requested briefing on whether the Title III Plan's modification of the automatic stay to permit holders of eminent domain and inverse condemnation claims to pursue and receive payment from the Clerk of the Court of First Instance applied to any of appellants' claims. And we asked the parties how the Plan's definition of "Allowed" claims should be considered given that "the holder of an Eminent Domain/Inverse Condemnation Claim" "must be paid in full to the extent they are Allowed Claims for just compensation." In re Fin. Oversight & Mgmt. Bd. for P.R., 636 B.R. at 168-69; see also id. at 82 (defining "Allowed" and "Allowed Claim"). (As Steidel points out in his brief, our prior decision did not comment on the difference between allowed and not allowed eminent domain/inverse condemnation claims.) Again, the parties' answers to these questions would help us determine whether we may review appellants' claims.

We now turn to appellants' briefing, particularly their responses to the jurisdictional questions posed. Here, appellants assert that they are only arguing that Steidel "has provided no proceeding, no information and no disclosure of the amounts of interests that were accrued on their accounts and the legal and accounting basis for the deduction of a 15% service fee upon those monies." Similarly, appellants also argue that the PROMESA

provisions need not apply because "[t]his is not a claim for interest against the underlying agencies," but that "[t]his claim centers on the disbursement procedures ordered by the Administrator and followed by each clerk of each first instance regional courts [sic] when third party deposits were received and disbursed." Steidel disagrees in part, arguing that appellants' administrative fee claim was filed in violation of the automatic stay and is subject to the Plan's discharge. (We say "in part" because Steidel does not dispute appellants' position on their interest claim.)

**IV**

After due consideration of the parties' arguments and PROMESA's automatic stay provisions, appellants' appeal of their administrative fee claim decided on summary judgment ends here.

PROMESA's automatic stay comes from two sections of the Bankruptcy Code expressly incorporated into the first section of Title III, which again are 11 U.S.C. §§ 362 and 922. See 48 U.S.C. § 2161(a). Section 362 is the general stay provision which stays "the commencement or continuation . . . of a judicial . . . proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Section 362 also stays "any act to obtain possession of property of the estate or of property from the estate." Id. § 362(a)(3). Section 922

- 14 -

applies "in addition to the stay provided by section 362" and stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." Id. § 922(a)(1). We've previously described § 922's purpose as "plug[ging] a hole left open by Section 362" by including actions against officers, Colón-Torres v. Negrón-Fernández, 997 F.3d 63, 69 n.5 (1st Cir. 2021), but importantly, "both sections apply only to suits in which the ultimate objective of enforcement is a claim against the debtor," id. at 69 (citation modified).

In the PROMESA context, there is no "estate." In re Fin. Oversight & Mgmt. Bd. For P.R., 939 F.3d 340, 349 (1st Cir. 2019). So the statute directs us to swap instances of "property of the estate" that appear in the incorporated Bankruptcy Code provisions for "property of the debtor," with the debtor being the Commonwealth. See id. (quoting 11 U.S.C. § 902(1)). "The practical ramification of the foregoing is that the reach of the automatic stay is broader in the PROMESA and municipal bankruptcy contexts than it is in the run-of-the-mill bankruptcy case." Id. But the Title III court must grant relief from this broad automatic stay on request and if the movant makes the requisite showing. See 11 U.S.C. § 362(d); see also HealthproMed Found., Inc., 982 F.3d at 20.

Appellants contend that PROMESA's automatic stay provisions do not apply because they are not seeking to enforce a "claim" against the Commonwealth.  That is so, they argue, because "[t]he deposits and the interest they accrue are vested" not with the Commonwealth, but instead "upon each plaintiff" whose money has been deposited.  But Puerto Rico law authorizes OAT to deduct an administrative fee from interest accrued on other funds in its possession.  See P.R. Laws Ann. tit. 7 § 253b.  And Steidel has consistently claimed "a direct, legal, and equitable interest on the Administrative Fee object of the Fee Claim" by virtue of Puerto Rico law and the judiciary's regulations.  (Emphasis omitted.)

At one point in their appellate briefing, appellants assert "the Government is not vested with any proprietary interest over the money itself."  But they do not dispute that the government, after deducting the administrative fee, would keep it.  And appellants fail to explain why, given the provisions of Puerto Rico law described above, the government lacks a proprietary interest in the administrative fee specifically.  Therefore, as Steidel contends, the judiciary arguably has a proprietary interest in the administrative fee.

In this instance, the request for the administrative fee that would be deducted pursuant to Puerto Rico law is, in our opinion, properly construed as a demand for the "property of the debtor" and, as such, falls within the scope of the automatic stay.

See In re Fin. Oversight & Mgmt. Bd. for P.R., 939 F.3d at 349; see also In re City of Stockton, 499 B.R. 802, 807 (Bankr. E.D. Cal. 2013) ("The City's money is property of the debtor within the meaning of § 362(a)(3).").[9] Because appellants filed their administrative fee claim in federal court in violation of the automatic stay, it is void and without legal effect. See HealthproMed Found., Inc, 982 F.3d at 19; In re Fin. Oversight & Mgmt. Bd. for P.R., 494 F. Supp. 3d 95, 104 (D.P.R. 2020) (citing In re Soares, 107 F.3d 969, 976 (1st Cir. 1997)). Our court lacks jurisdiction to review the merits of such void actions. See HealthproMed Found., Inc, 982 F.3d at 19.[10]

For the reasons stated, we dismiss this portion of appellants' appeal.

---

[9] On September 21, 2022, the Title III court determined that claims against entities included in a list filed in the Title III proceedings are claims against the Commonwealth. In re Fin. Oversight & Mgmt. Bd. for P.R., 650 B.R. 286, 292 (D.P.R. 2022) (citing the "Central Government Entities List" at Title III docket entry 2828 which includes OAT); see also Cruz v. Puerto Rico, 558 F. Supp. 2d 165, 176 (D.P.R. 2007) (explaining that "[OAT] is not separately incorporated but is an integral part or an arm of the Puerto Rico Supreme Court, which in turn is an arm of the Commonwealth" for Eleventh Amendment purposes).

[10] Our inability to reach the merits of the administrative fee claim should not be read as endorsing the practice of retaining any percentage of a litigant's just compensation award. Furthermore, we do not decide whether appellants' administrative fee claim is subject to the Title III Plan's discharge.

We adopt a different approach for appellants' interest claim. Whether the automatic stay or discharge provisions apply is a question of jurisdiction. See HealthproMed Found., Inc, 982 F.3d at 19 (citing Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). But given the arguments that appellants raise, their interest claim has separate jurisdictional problems of its own. Because "we can address jurisdictional issues in any order we choose," Acheson Hotels, LLC v. Laufer, 601 U.S. 1, 4 (2023), we turn to those arguments first.

We review the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo. Zhou v. Desktop Metal, Inc., 120 F.4th 278, 287 (1st Cir. 2024). In doing so, we accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in appellants' favor. Id. We will affirm "if the complaint fails to allege facts sufficient to demonstrate a plausible entitlement to relief." Id. (citation modified).

In the proceedings below, the district court rested its conclusion, at least in part, on its understanding that appellants had alleged an injury arising not just from OAT's retention of the accrued interest, but from the retention of that interest without providing a transparent and manageable process for retrieving it. The district court observed that, because appellants did not

challenge the relevant Puerto Rico law or judicial regulations, their challenge amounted to essentially an "objection [to] . . . the supposedly opaque and unmanageable process -- or lack thereof -- [for] calculating and disbursing [interest] funds." From that premise, the district court reasoned that, absent an allegation that appellants had sought to obtain the interest, their injury was "abstract and hypothetical" and resembled a "generalized grievance," in that appellants were seeking "essentially a mandamus from the Court that the OAT implement a clearer and more accessible system of notice, calculation and disbursement."

In challenging the district court's conclusion that they lacked standing, appellants fail to engage with that latter and critical aspect of the district court's reasoning. Instead, appellants simply contend that "[t]heir interest in the accrued interest is not conjectural, contingent, or speculative." But that proposition appears to have been conceded by Steidel below (that the accrued interest is appellants' property) and accepted by the district court. And appellants continue to press their point that they "are entitled [to] but not provided a meaningful procedure to petition for the payment of the interest" without explaining why they have standing to challenge the adequacy of those procedures absent an allegation that they requested the interest be disbursed. Thus, appellants have not met their burden

- 19 -

to show that the district court erred in concluding that they lack standing.  See McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003) ("The party invoking federal jurisdiction bears the burden to establish standing."); see also In re Savage, 169 F.4th 45, 58 (1st Cir. 2026) (applying the "prophylactic rule" that "[a] party who fails to develop an argument as to why a particular order is erroneous waives their ability to do so").[11]

**VI**

For the reasons given above, we **dismiss** appellants' appeal from the entry of summary judgment and **affirm** the district court's dismissal.  The parties shall bear their own costs.

---

[11] Now seems as good a time as any to mention the fact that appellants do not develop any argument as to why the district court erred with respect to their due process claims specifically.  We're not in the business of making arguments on a party's behalf, which means appellants have waived their due process claims for lack of development.  See, e.g., Alaniz v. Bay Promo, LLC, 143 F.4th 18, 31-32 (1st Cir. 2025).